## PULASKI CHASE CO-OPERATIVE, Plaintiff-Appellant,

v.

## KELLOGG-CITIZENS NATIONAL BANK, Defendant-Respondent.

Court of Appeals

*No. 85–0386. Submitted on briefs January 21, 1986.—Decided March 11, 1986.*

(Also reported in 386 N.W.2d 510.)

For the appellant there were briefs by *Mary A. Klass* and *Lubinski, Rottier & Lubinski* of Seymour.

For the respondent there was a brief by *John A. Muraski* and *Nelson & Schmeling* of Green Bay.

Before Cane, P.J., Dean and LaRocque, JJ.

LAROCQUE, J.   Pulaski Chase Co-operative appeals a summary judgment granted to Kellogg-Citizens National Bank. Pulaski seeks to recover $6,139.13 representing the face amount of Kellogg's cashier's check issued to Pulaski. The issue is whether Kellogg may

stop payment on its cashier's check for failure of consideration. We conclude that because Kellogg dealt directly with Pulaski, it was entitled to raise its defense of failure of consideration regardless whether Pulaski was a holder in due course. We therefore affirm the judgment.

The material facts are undisputed. Pulaski sold farm supplies on credit to Robert Borlee in return for a $6,139.13 personal check drawn on Kellogg. The check was postdated to November 15, 1983. In mid-November, Borlee advised Pulaski that he lacked sufficient funds to cover the check but agreed to replace it with two new checks, one for $3,000 to be cashed immediately and a second for $3,139.13 to be cashed later. Borlee, without Pulaski's knowledge, then placed a stop order on the original $6,139.13 check.

While awaiting delivery of the two new checks, Pulaski queried Kellogg as to funds in Borlees' account and was advised that the account held at least $6,139.13. Thus, rather than obtaining the new checks, Pulaski presented Kellogg the original $6,139.13 check. A Kellogg teller failed to discover a stop order and issued Pulaski a cashier's check in exchange for the Borlees' check.

Kellogg, upon realizing its error, stopped payment on the cashier's check, and Pulaski now seeks the check's face amount. Both parties moved for summary judgment, and the trial court granted Kellogg's motion.[1]

---

[1] In summary judgment cases, we follow the same analysis as the trial court. That procedure, discussed in *Preloznik v. City of Madison*, 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983), need not be repeated here. Pulaski's claim and Kellogg's de-

A cashier's check is a draft drawn by a bank upon itself. *See* J. White and R. Summers, Handbook of the Law Under the Uniform Commercial Code § 17–5 at 681 (2d ed. 1980). Authorities conflict on the question whether a bank can dishonor its cashier's check. Some jurisdictions apply a flat prohibition against dishonoring a cashier's check by the issuing bank.[2] Other jurisdictions disdain a per se rule and allow a bank to dishonor its cashier's check where the check holder has dealt directly with the bank or is not a holder in due course, and where there is a failure of consideration or a fraud perpetrated on the bank.[3]

---

fense to that claim are adequately raised in the pleadings. We therefore proceed to decide the legal issue.

[2] *See Swiss Credit Bank v. Virginia Nat'l Bank-Fairfax,* 538 F.2d 587 (4th Cir. 1976); *Munson v. American Nat'l Bank and Trust Co.* 484 F.2d 620 (7th Cir. 1973); *Kaufman v. Chase Manhattan Bank,* 370 F.Supp. 276 (S.D.N.Y. 1973); *Able & Assocs., Inc. v. Orchard Hill Farms,* 395 N.E.2d 1138 (Ill. App. Ct. 1979), *overruling Bank of Niles v. American State Bank,* 303 N.E.3d 186 (Ill. App. Ct. 1973); *National Newark & Essex Bank v. Giordano,* 268 A.2d 327 (N.J. Super. Ct. 1970); *Moon Over The Mountain, Ltd. v. Marine Midland Bank,* 87 Misc. 2d 918, 386 N.Y.S.2d 974 (N.Y. Civ. Ct. 1976); *Wertz v. Richardson Heights Bank and Trust,* 495 S.W.2d 572 (Tex. 1973).

[3] *See TPO, Inc. v. FDIC,* 487 F.2d 131 (3d Cir. 1973); *National Bank v. Miner,* 140 P. 27 (Cal. 1914); *Wilmington Trust Co. v. Delaware Auto Sales,* 271 A.2d 41 (Del. 1970); *Tropicana Pools, Inc. v. First Nat'l Bank,* 206 So. 2d 48 (Fla. Dist. Ct. App. 1968); *Wright v. Trust Co.,* 134 S.E.2d 457 (Ga. Ct. App. 1963); *State Bank v. American Nat'l Bank,* 266 N.W.2d 496 (Minn. 1978); *Dakota Transfer & Storage Co. v. Merchants Nat'l Bank & Trust Co.,* 86 N.W.2d 639 (N.D. 1957).

We conclude that an issuing bank may raise appropriate defenses and refuse to honor its cashier's check held by a party to the instrument with whom the bank has dealt. The proposition upon which an issuing bank is denied the right to stop payment in those jurisdictions so holding is that, unlike an ordinary check, a cashier's check is accepted when it is issued. *See* secs. 404.403 and 404.303, Stats. We reject that approach because it ignores fundamental principles of equity. As an example, a bank from which a cashier's check has been procured by fraud should be able to defeat liability as long as the check remains in the hands of the remitter who perpetrated the fraud. *See Wertz v. Richardson Heights Bank and Trust,* 495 S.W.2d 572, 575 (Tex. 1973) (Walker, J., dissenting). The Uniform Commercial Code recognizes general principles of law and equity unless displaced by particular provisions of the code. Section 401.103, Stats. Where the rights of innocent third persons are not involved, there is no overpowering reason to compel a bank to pay its cashier's check without regard to defenses. "[T]he strong considerations of public policy favoring negotiability and reliability of cashier's checks are not germane." *TPO, Inc. v. FDIC,* 487 F.2d 131, 135 (3d Cir. 1973). Moreover, because the bank, and not its customer, stops payment on the cashier's check, the bank's reputation and credit are not at stake. *See Travi Construction Corp. v. First Bristol County National Bank,* 405 N.E.2d 666, 668 (Mass App. Ct. 1980). If an innocent third party takes the instrument for value, the result would obviously be different.

■

Kellogg has established its right to refuse payment. Failure of consideration is a proper defense against any person not having the rights of a holder in due course. Sections 403.408 and 403.306(2), Stats. There was a failure of consideration here because Kellogg received Borlee's stop payment order before it issued the cashier's check and thus had no right to charge the Borlees' account. *See Wilmington Trust Co. v. Delaware Auto Sales,* 271 A.2d 41, 42 (Del. 1970). Consequently, Kellogg received nothing for the cashier's check.

■

Pulaski argues that it was a holder in due course and, as such, is immune to a failure of consideration defense. We need not decide that issue because even if Pulaski had been a holder in due course, it would still take the cashier's check subject to the defenses of any party to the check with whom it had dealt. Section 403.305(2), Stats. Failure of consideration is one such defense. *Travi Construction,* 405 N.E.2d at 669. Kellogg may assert its own defenses as a basis for dishonor although it may not rely on the defenses of any third party. *See Louis Falcigno Enterprises v. Massachusetts Bank and Trust Co.,* 436 N.E.2d 993, 994 (Mass. App. Ct. 1982).

Pulaski's remedy is against the Borlees, both on their underlying obligation and on their contract as drawer. Section 403.413(2), Stats.

*By the Court.*—Judgment affirmed.